STUART F. DELERY
Principal Deputy Assistant Attorney General
ARTHUR R. GOLDBERG
Assistant Director, Federal Programs Branch
KATHRYN L. WYER (Utah Bar No. 9846)
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W., Washington, DC 20530
Tel. (202) 616-8475/Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF OAKLAND,<br><br>           Plaintiff,<br><br>      v.<br><br>ERIC HOLDER, Attorney General of the United States; MELINDA HAAG, U.S. Attorney for the Northern District of California,<br><br>           Defendants. | CASE NO. 3:12-cv-5245 (MEJ)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Hearing Date:   Jan. 17, 2013<br>Hearing Time:  10:00 a.m.<br>Courtroom:      B |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 17, 2013, at 10:00 a.m. or as soon thereafter as counsel may be heard, defendants Eric Holder, Attorney General of the United States; and Melinda Haag, U.S. Attorney for the Northern District of California (collectively, "Defendants"), will bring the following Motion To Dismiss before the Honorable Maria-Elena James, Chief Magistrate Judge, Courtroom B, at the United States Courthouse, 450 Golden Gate Avenue, 15th Floor, San Francisco, California 94102.

Defendants move to dismiss Plaintiff's complaint and this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the grounds that this Court lacks subject matter jurisdiction and Plaintiff has failed to state a claim upon which relief can be granted. This motion is based on Plaintiff's pleadings, Defendants' Memorandum in Support of Motion to Dismiss, filed herewith, and the files and records of this case.

1

## **RELIEF REQUESTED**

Defendants seek dismissal of this action in its entirety on the ground that the United

States has not waived sovereign immunity for the claims raised in this action and that the Court

accordingly lacks subject matter jurisdiction. In the alternative, Defendants seek dismissal of this

action in its entirety on the ground that Plaintiff's Complaint fails to state a claim upon which

relief can be granted.

## **STATEMENT OF ISSUE TO BE DECIDED**

Whether the United States has waived sovereign immunity for the claims raised in this

action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706, where Plaintiff seeks

to mount a collateral attack on forfeiture proceedings in another case, and an adequate remedy

already exists under the forfeiture rules through the forfeiture proceeding itself. In the

alternative, whether Plaintiff's statute of limitations and estoppel arguments fail to state claims

upon which relief can be granted.

Dated:  December 10, 2012                     Respectfully submitted,


STUART F. DELERY
Principal Deputy Assistant Attorney General
ARTHUR R. GOLDBERG
Assistant Director, Federal Programs Branch

 /s/ Kathryn L. Wyer
KATHRYN L. WYER (Utah Bar No. 9846)
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Tel. (202) 616-8475/Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for the Defendants*

STUART F. DELERY
Principal Deputy Assistant Attorney General
ARTHUR R. GOLDBERG
Assistant Director, Federal Programs Branch
KATHRYN L. WYER (Utah Bar #9846)
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W., Washington, DC 20530
Tel. (202) 616-8475/Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF OAKLAND,<br><br>Plaintiff,<br><br>v.<br><br>ERIC HOLDER, Attorney General of the United States; MELINDA HAAG, U.S. Attorney for the Northern District of California,<br><br>Defendants. | CASE NO. 3:12-cv-5245 (MEJ)<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date:  January 17, 2013<br>Hearing Time:  10:00 a.m.<br>Courtroom:  B |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ....................................................................................................1

BACKGROUND .....................................................................................................2

STANDARD OF REVIEW ........................................................................................3

ARGUMENT .........................................................................................................5

      I.     THE UNITED STATES HAS NOT WAIVED SOVEREIGN IMMUNITY FOR A SUIT SUCH AS THIS, WHERE THE PLAINTIFF MOUNTS A COLLATERAL CHALLENGE TO CIVIL FORFEITURE PROCEEDINGS UNDERWAY IN ANOTHER ACTION .................................................................5

      II.    PLAINTIFF'S STATUTE OF LIMITATIONS CLAIM MUST FAIL  .................8

      III.   PLAINTIFF'S ESTOPPEL CLAIM MUST FAIL....................................9

CONCLUSION.....................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>CASES</u>

*Alternative Cmty. Health Care Co-op., Inc. v. Holder,*
    No. 11-2585, 2012 WL 707154 (S.D. Cal. Mar. 5, 2012) … ........................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................4

*Balistreri v. Pac. Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ................................4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................4

*Brem–Air Disposal v. Cohen*, 156 F.3d 1002, 1004-05 (9th Cir. 1998) ........................7

*Can v. DEA*, 764 F. Supp. 2d 519 (W.D.N.Y. 2011) .....................................................5

*Consol. Edison Co. v. U.S. Dep't of Energy*, 247 F.3d 1378 (Fed. Cir. 2001) ..............5

*Hammitt v. United States*, 69 Fed. Cl. 165 (2005) ......................................................5-6

*Heckler v. Cmty. Health Servs., Inc.*, 467 U.S. 51 (1984) ............................................11

*Hernandez v. United States*, 86 F. Supp. 2d 331 (S.D.N.Y. 2000) ................................6

*Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994) ................................3

*KVOS, Inc. v. Associated Press*, 299 U.S. 269 (1936) ...................................................4

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .............................................4

*MAMM v. Holder* ("*MAMM I*"), 866 F. Supp. 2d 1142, 1155-56 (N.D. Cal. 2011) ........10, 11, 12

*MAMM v. Holder* ("*MAMM II*"),
    No. 11-5349, 2012 WL 2862608, (N.D. Cal. July 11, 2012) ..........................................10

*Martin v. Leonhart*, 717 F. Supp. 2d 92 (D.D.C. 2010) ...............................................5

*McCarthy v. United States*, 850 F.2d 558 (9th Cir.1988) ..............................................4

*Moses v. United State*s, No. 1:08-cv-19, 2009 WL 736222 (D. Vt. Mar. 17, 2009) .....................6

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ...........................................................11

*Norton v. SUWA*, 542 U.S. 55 (2004) ............................................................................5

iii

*Sacramento Nonprofit Collective v. Holder,* 855 F. Supp. 2d 1100 (E.D. Cal. 2012)...................10

*Sarit v. DEA*, 987 F.2d 10 (1st Cir. 1993) ..............................................................................6

*Shloss v. Sweeney*, 515 F. Supp. 2d 1068 (N.D. Cal. 2007) ..........................................................4

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) .................................................4

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation,*
        873 F.2d 1221 (9th Cir. 1989) ..........................................................................3-4

*Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495 (9th Cir. 2001) ........................................4

*Town of Sanford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998) ...............................................7

*United States v. $11,500.00 in U.S. Currency*, 797 F. Supp. 2d 1092 (D. Or. 2011) ...................7

*United States v. $20,193.39 U.S. Currency*, 16 F.3d 344 (9th Cir. 1994) ....................................6

*United States v. $21,404.00 in U.S. Currency,*
        No. 08-1688, 2008 WL 5274539 (D. Ariz. Dec. 18, 2008) ..................................7

*United States v. $133,420 in U.S. Currency*, 672 F.3d 629 (9th Cir. 2012) .................................6

*United States v. $487,825.000 in U.S. Currency*, 484 F.3d 662 (3d Cir. 2007) ...........................7

*United States v. $515,060.42 in U.S. Currency*, 152 F.3d 91 (6th Cr. 1998) ...............................9

*United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504 (7th Cir. 2010) .......................8

*United States v. All Funds in the Account of Property Futures, Inc.*,
        820 F. Supp. 2d 1305 (S.D. Fla. 2011) ............................................................7

*United States v. Bell*, 602 F.3d 1074 (9th Cir. 2010) ...............................................................11

*United States v. Hicks*, 722 F. Supp. 2d 829 (E.D. Mich. 2010) ...............................................12

*United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483 (2001) ...........................2, 13

*United States v. Real Prop.*, 135 F.3d 1312 (9th Cir. 1998) ........................................................7

*United States v. Real Prop. Located at 22 Santa Barbara Dr.*, 264 F.3d 860 (9th Cir. 2001) ......7

*United States v. Schafer*, 625 F.3d 629 (9th Cir. 2010) .............................................................12

*United States v. Stacy*, 734 F. Supp. 2d 1074 (S.D. Cal. 2010) ..................................................12

iv

*Wash. Toxics Coal. v. EPA*, 413 F.3d 1024 (9th Cir. 2005) ................................................5

*Watkins v. U.S. Army,* 875 F.2d 699 (9th Cir. 1989) (en banc) ...................................11

*Wood v. McEwen*, 644 F.2d 797 (9th Cir. 1981) ............................................................4

## **STATUTES**

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 .........................................1

5 U.S.C. § 702 ................................................................................................................5

5 U.S.C. § 704 ................................................................................................................5

5 U.S.C. § 706 ................................................................................................................5

18 U.S.C. § 983 .....................................................................................................2, 5, 6, 7

18 U.S.C. § 1955 ............................................................................................................9

19 U.S.C. § 1595a ..........................................................................................................9

19 U.S.C. § 1621 ............................................................................................................8

Controlled Substances Act ("CSA"), as amended, 21 U.S.C. §§ 801 *et seq.* ...................... *passim*

21 U.S.C. § 841 ..............................................................................................................2

21 U.S.C. § 856 ..............................................................................................................2

21 U.S.C. § 881 ..............................................................................................................9

### INTRODUCTION

Plaintiff, the City of Oakland, has initiated this action in an attempt to halt forfeiture proceedings that the United States has initiated against an Oakland property housing Harborside Health Center ("Harborside"), a marijuana dispensary. Plaintiff's lawsuit was filed after the time to assert a claim in the forfeiture action itself had passed, and Plaintiff lacks any ownership interest in the property at issue. There can be no dispute, therefore, that Plaintiff lacks standing to participate in the forfeiture action. In an apparent attempt to circumvent that jurisdictional bar, however, Plaintiff necessarily runs afoul of another jurisdictional requirement – that the United States waive sovereign immunity for the claims asserted. Plaintiff invokes the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. However, the APA does not provide the necessary waiver when forfeiture proceedings themselves provide an alternative forum – and indeed the exclusive forum – for raising a challenge to forfeiture. As common sense would dictate, the mere fact that Plaintiff could not itself file a claim in the forfeiture action does not allow it to bypass that forum – and its procedural requirements -- through a separate action in this Court.

Even if this jurisdictional defect were disregarded, the two claims Plaintiff asserts in its Complaint fail on the merits and are therefore subject to dismissal for failure to state a claim upon which relief can be granted. First, Plaintiff argues that the United States initiated forfeiture against the Oakland property outside the five-year statute of limitations because the marijuana dispensary began distributing marijuana on those premises over six years ago. Plaintiff fails to recognize, however, that under the Controlled Substances Act ("CSA"), every act of possession, distribution, or cultivation constitutes a separate offense that could independently justify forfeiture. It is undisputed that Harborside possessed, cultivated, and distributed marijuana on numerous occasions during the five years before the United States issued forfeiture proceedings. The forfeiture proceedings thus fall well within the statute of limitations.

Second, Plaintiff argues that the United States is estopped from seeking forfeiture of the Oakland property because it had adopted a "policy of nonenforcement" of the CSA against all those in compliance with state law. Even assuming that the marijuana dispensary operating at the Oakland property – which is alleged to be the largest on the planet, with annual gross sales

1

revenue of $20 million – were in compliance with California law, this claim cannot succeed. Indeed, a member of this Court, as well as two other federal district courts in California, have already rejected similar arguments. As those courts recognized, the United States has never misrepresented the fact that marijuana distribution, possession, and cultivation remain illegal under federal law. Even if a change in enforcement policy had occurred, Plaintiff cannot meet its heavy burden to establish the "affirmative misconduct" that would be necessary before the United States could be estopped from enforcing the CSA.  In addition, Plaintiff cannot plausibly assert that it has detrimentally relied upon the government's prior alleged nonenforcement policy when it has received a windfall of millions of dollars in tax and sales revenues through the operation of illegal marijuana dispensaries within its borders. And while Plaintiff asserts that Oakland residents who need marijuana for medical purposes will suffer harm if the dispensary at the Oakland property is closed, the Supreme Court's decision that "marijuana has 'no currently accepted medical use'" under the CSA precludes consideration of  such "medical necessity" arguments. *United States v. Oakland Cannabis Buyers' Co-op*., 532 U.S. 483, 491 (2001). There is a strong public interest in the enforcement of federal law, as well as in the protection of the public from drugs that federal regulatory authorities have not approved for medical use.  This action should therefore be dismissed.

## BACKGROUND

The United States initiated a civil forfeiture action against the property located at 1840 Embarcadero, Oakland, California on July 9, 2012. *See United States v. Real Property and Improvements Located at 1840 Embarcadero, Oakland, California* ("*1840 Embarcadero*"), No. CV 12-3567 (N.D. Cal.). The forfeiture complaint alleges that the defendant real property is the business location of Harborside Health Center, a retail marijuana store that distributes marijuana in violation of the CSA, 21 U.S.C. §§ 841 and 856. *See* Compl., *1840 Embarcadero* (July 6, 2012). Pursuant to 18 U.S.C. § 983 and Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims ("Rule G"), any "person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending." Rule G(5)(a)(i); *cf.* 18 U.S.C. § 983(a)(4)(A). The time limit for filing such a claim is

2

either set forth in a "direct notice" sent to a known potential claimant, or, for claimants who did not receive direct notice, "no later than 60 days after the first day of publication on an official internet government forfeiture site." Rule G(5)(a)(ii).

With respect to the *1840 Embarcadero* action, the United States served direct notice on certain potential claimants and also provided notice by publication on an official government forfeiture website, beginning on July 11, 2012. *See* Proof of Publication of Notice of Forfeiture Action, ECF No. 46, *1840 Embarcadero* (Oct. 4, 2012). Thus, under Rule G(5)(a)(ii), any claim related to the forfeiture action by anyone who did not receive direct notice was due no later than September 10, 2012. One of those who filed a claim prior to the deadline in the *1840 Embarcadero* action was the Patient Mutual Assistance Collective Corporation ("PMACC"), which occupies the property and runs the Harborside Health Center.

Plaintiff, on the other hand, did not file a claim in *1840 Embarcadero* on or before the September 10, 2012, deadline. Rather, on October 10, 2012, Plaintiff filed the above-captioned lawsuit, naming Eric Holder, Attorney General of the United States; and Melinda Haag, U.S. Attorney for the Northern District of California, as defendants. Through this action, Plaintiff seeks a "declaratory judgment that Defendants and any agency under their authority have no right to seek civil forfeiture of the real property located at 1840 Embarcadero, Oakland, California based on purported violations of the Controlled Substances Act," as well as injunctive relief prohibiting Defendants from seeking such forfeiture. Compl. at 15. Pursuant to an administrative motion by Plaintiff, the Court has deemed the above-captioned action "related" to *1840 Embarcadero* pursuant to Local Rule 3-12. Both cases are thus before the same Judge. However, the cases have not been consolidated pursuant to Fed. R. Civ. P. 42.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, a court is guided by the principle that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). Thus, a court is "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears," *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225

1    (9th Cir. 1989), and the plaintiff bears the burden of establishing that such jurisdiction exists.

2    *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936); *Tosco Corp. v. Cmtys. for a Better*

3    *Env't*, 236 F.3d 495, 499 (9th Cir. 2001). The court's review "is not restricted to the pleadings;"

4    rather, the court "may review extrinsic evidence to resolve any factual disputes which affect

5    jurisdiction." *Shloss v. Sweeney*, 515 F. Supp. 2d 1068, 1074 (N.D. Cal. 2007) (citing *McCarthy*

6    *v. United States*, 850 F.2d 558, 560 (9th Cir.1988)).

7         Under Rule 12(b)(6), a pleading may be dismissed when it fails to "state a claim upon

8    which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal for failure to state a claim "can

9    be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under

10   a cognizable legal theory." *Balistreri v. Pac. Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

11   "Threadbare recitals of the elements of a cause of action" are insufficient; rather, the complaint's

12   factual allegations, while taken as true, must "state[s] a plausible claim for relief [in order to]

13   survive[] a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009)

14   (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

15        In reviewing a motion under Rule 12(b)(6), the Court may consider the facts alleged in

16   the complaint, documents attached to or relied upon in the complaint, and matters of which the

17   Court may take judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

18   Among other things, the Court "may take judicial notice of matters of public record." *Id.* And

19   although, for purposes of a Rule 12(b)(6) motion, the Court should generally accept all

20   allegations of material fact in the Complaint as true, the "court need not [ ] accept as true

21   allegations that contradict matters properly subject to judicial notice or by exhibit. . . . Nor is the

22   court required to accept as true allegations that are merely conclusory, unwarranted deductions of

23   fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

24   2001). The district court has broad discretion to dismiss claims under Rule 12(b)(6) when they

25   have no legal merit. *Wood v. McEwen*, 644 F.2d 797, 800 (9th Cir. 1981).

26

27

28

4

## ARGUMENT

**I.  THE UNITED STATES HAS NOT WAIVED SOVEREIGN IMMUNITY FOR A SUIT SUCH AS THIS, WHERE THE PLAINTIFF MOUNTS A COLLATERAL CHALLENGE TO CIVIL FORFEITURE PROCEEDINGS UNDERWAY IN ANOTHER ACTION**

It is axiomatic that proceedings in an ongoing federal court case cannot be halted by a non-party who makes no attempt to participate in the case in question, but files its own separate lawsuit. Yet Plaintiff here is trying to circumvent this rule by filing an action separate from the forfeiture proceedings already underway in *1840 Embarcadero*, and claiming entitlement to relief in this action that consists of nothing other than enjoining the forfeiture of that property. Compl. at 15-16. Plaintiff's effort must be rejected because the United States has not waived sovereign immunity for such a collateral attack.

Plaintiff purports to bring this suit pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702 and 706. The APA provides judicial review of "'final agency action for which there is no other adequate remedy in a court.'" *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1034 (9th Cir. 2005) (quoting 5 U.S.C. § 704); *see also Norton v. SUWA*, 542 U.S. 55, 62 (2004) (explaining limited meaning of "final agency action"). However, § 704 "excludes from the APA's sovereign immunity waiver those claims for which adequate remedies are elsewhere available." *Consol. Edison Co. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1383 (Fed. Cir. 2001).

Here, the civil forfeiture statute itself provides a remedy for those seeking to contest a forfeiture. Specifically, a forfeiture claimant may file a claim in the forfeiture action within a specified time period. Rule G(5)(a)(i); *cf.* 18 U.S.C. § 983(a)(4)(A). This remedy is not only "adequate," but courts have expressly held that civil forfeiture proceedings are the *exclusive* forum in which a civil forfeiture may be contested. *Cf. Can v. DEA*, 764 F. Supp. 519, 520 (W.D.N.Y. 2011) (recognizing that 18 U.S.C. § 983 provides exclusive remedy for those seeking to challenge civil forfeiture); *Martin v. Leonhart*, 717 F. Supp. 2d 92, 99-100 (D.D.C. 2010) ("Under the scheme established by Congress, the filing of a claim by an aggrieved party [pursuant to 18 U.S.C. § 983] is the exclusive means by which a claimant can have a judicial determination as to the forfeiture's validity."); *see also Hammitt v. United States*, 69 Fed. Cl.

165, 169 (2005) (forfeiture could not be challenged through takings claim filed separately from forfeiture action itself). The APA therefore does not waive sovereign immunity for such a claim. *Sarit v. DEA*, 987 F.2d 10, 17 (1st Cir. 1993) (federal forfeiture statutes preclude judicial review of forfeiture proceedings under the APA); *Hernandez v. United States*, 86 F. Supp. 2d 331, 337 (S.D.N.Y.  2000) (APA did not waive sovereign immunity where plaintiff had a remedy through forfeiture proceedings); *Moses v. United State*s, No. 1:08-cv-19, 2009 WL 736222, at *2 (D. Vt. Mar. 17, 2009) (plaintiff could not bring APA claim when there was an adequate remedy available through ongoing forfeiture proceeding).

Of course, it is little wonder that Plaintiff has made no attempt to participate directly in the *1840 Embarcadero* forfeiture proceeding because it would lack standing to file a claim in that action. For one thing, Plaintiff does not claim any ownership or possessory interest in the 1840 Embarcadero property. The Ninth Circuit has clearly stated that only those with "an ownership interest or a possessory interest" have standing to file a claim in a forfeiture proceeding. *See United States v. $133,420 in U.S. Currency*, 672 F.3d 629, 637-38 (9th Cir. 2012). Thus, even "unsecured creditors" lack standing, despite their financial interest in repayment of the debts owed to them. *See United States v. $20,193.39 U.S. Currency*, 16 F.3d 344, 346 (9th Cir. 1994); *see also* 18 U.S.C. § 983(d)(6)(B)(i) (excluding those with "general unsecured interest[s]" from the definition of owner). While Plaintiff alleges that the operation of marijuana dispensaries in the City of Oakland generates substantial tax revenues, Compl. ¶¶ 53-54, this does not qualify as an ownership or possessory interest in the 1840 Embarcadero property.

In addition to its lack of ownership or possessory interest in the 1840 Embarcadero property, Plaintiff would also be barred from directly participating in the forfeiture action because Plaintiff did not file a claim within the statutory time limit. *See* 18 U.S.C. § 983(a)(2) (requiring claimants wishing to dispute forfeiture of property to file claim within designated time period). Indeed, Plaintiff did not even initiate the instant lawsuit until October 10, 2012, well after the September 10, 2012, deadline for filing a claim in the *1840 Embarcadero* forfeiture action had passed. Plaintiff would therefore lack standing on this basis as well. "Failure to

6

comply with procedural requirements for opposing forfeiture," including the time limits for filing a claim, "precludes a person from establishing standing as a party to a forfeiture action." *United States v. $21,404.00 in U.S. Currency*, No. 08-1688, 2008 WL 5274539, at *2 (D. Ariz. Dec. 18, 2008) (citing *United States v. Real Prop.*, 135 F.3d 1312, 1315 (9th Cir. 1998); *United States v. Real Prop. Located at 22 Santa Barbara Dr.*, 264 F.3d 860, 870 (9th Cir. 2001)); *United States v. $487,825.000 in U.S. Currency*, 484 F.3d 662 (3d Cir. 2007) ("To establish statutory standing in a forfeiture case, the claimant must comply with the procedural requirements set forth in Rule [G](6)(a) and § 983(a)(4)(A)."); *United States v. All Funds in the Account of Property Futures, Inc.*, 820 F. Supp. 2d 1305, 1319 (S.D. Fla. 2011) ("The law is well established that in order to establish statutory standing in a forfeiture case, strict compliance with the Supplemental Rules [including Rule G] is required."); *United States v. $11,500.00 in U.S. Currency*, 797 F. Supp. 2d 1092, 1097-98 (D. Or. 2011) ("Statutory standing requires that a claimant comply with the procedural requirement of 18 U.S.C. § 983(a)(4)(A) and the Supplemental Rules . . . .").

In the absence of standing to file a claim, Plaintiff could not have sought to enjoin forfeiture in the forfeiture action itself. *See* Rule G(8) (only a claimant "who establishes standing to contest forfeiture may move to dismiss the [forfeiture] action"). Plaintiff seeks to use the instant lawsuit as nothing more than a mechanism for circumventing the limitations on standing that are set forth in the forfeiture rules. However, it is well settled that, where there exists a specific statutory process that can provide the remedy that a litigant seeks, the "other adequate remedy" limitation in § 704 cannot be surmounted simply because the litigant could not succeed in obtaining relief through that process. *See Town of Sanford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998) ("[T]he question posed by APA Section 704 is whether [there are] adequate remedies, not whether [a particular plaintiff] will be entitled to receive these remedies." (internal quotation omitted); *see also Brem–Air Disposal v. Cohen*, 156 F.3d 1002, 1004-05 (9th Cir. 1998) (no APA review where Congress provided right of action under another statute, even though the plaintiff had failed to provide notice within the time required by that statute). This action should therefore be dismissed on sovereign immunity grounds.

7

## II. PLAINTIFF'S STATUTE OF LIMITATIONS CLAIM MUST FAIL

In the alternative, even if the Court were to hold that Plaintiff's claims were not barred by sovereign immunity, Plaintiff fails to state a claim upon which relief can be granted. Count One of Plaintiff's Complaint alleges that the federal government's initiation of forfeiture proceedings against the 1840 Embarcadero property is barred by the five-year statute of limitations applicable to forfeiture actions, as set forth in 19 U.S.C. § 1621. Specifically, Plaintiff alleges that because Harborside Health Center began operating as a marijuana dispensary at the 1840 Embarcadero address in 2006, the United States should have known that Harborside was violating the CSA more than five years before it initiated forfeiture proceedings on July 9, 2012. *See* Compl. ¶ 64.

Section 1621 provides that "[n]o . . . forfeiture of property accruing under customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered." 18 U.S.C. § 1621. As the Seventh Circuit has recognized, the five-year limitations period begins to run on the date of the "alleged offense," which "clearly means the alleged offense that gives rise to the civil forfeiture action." *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 508 (7th Cir. 2010). The court further explained that, "[w]hen there are multiple, distinct underlying crimes that independently could support forfeiture of the same property, nothing in the plain language of § 1621 bars a court from adjudicating a forfeiture action as long as at least one alleged offense is not time-barred, even if the statute of limitations has run on the remainder of the underlying crimes." *Id.* Thus, in *5443 Suffield Terrace*, the court held that a forfeiture action was not barred by the statute of limitations where the United States had discovered smuggled cigars in the property owner's house in 1997 and 1999, less than five years before the action was initiated, even though the United States had been previously aware of the owner's smuggling activities in 1996, outside the five-year limitations period. *See id.* The Seventh Circuit distinguished the case before it from an earlier Sixth Circuit case where the court concluded that, because the alleged offense was "the operation of a gambling business – a single, continuing offense,"[1] the five-year limitations period began when

---

[1] The statutory provision. pursuant to which the forfeiture in the Sixth Circuit case occurred, defines the offense at issue as "conduct[ing], financ[ing], manag[ing], supervis[ing] direct[ing],

8

the government first discovered that ongoing offense. *See id.* (discussing *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 91 (6th Cr. 1998)).

In the *1840 Embarcadero* proceeding, the United States alleges that the property in question is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7) because it has been used, or is intended to be used, "to commit, or to facilitate the commission of," a violation of the CSA. *See* Compl. ¶ 24, ECF No. 1, *1840 Embarcadero*. Under the CSA, every sale or act of distribution or dispensing of marijuana constitutes a separate offense. *See* 21 U.S.C. § 841(a)(1). The situation here is therefore analogous to the separate acts of smuggling at issue in the Seventh Circuit case, rather than the ongoing operation of a gambling business at issue in the Sixth Circuit case. Plaintiff effectively concedes that numerous separate acts of dispensing and distribution of marijuana have occurred at the 1840 Embarcadero property within the five years prior to the initiation of forfeiture proceedings. *See* Compl. ¶ 31 (noting that Harborside has paid more than $1 million in state and city taxes and that "customers pay 8.75% sales tax on all purchases"). Any of these acts provide the basis for forfeiture and defeat Plaintiff's statute of limitations argument.

## III.   PLAINTIFF'S ESTOPPEL CLAIM MUST FAIL

Count Two of Plaintiff's Complaint alleges that the United States is estopped from enforcing the CSA against Harborside Health Center or initiating forfeiture proceedings against the 1840 Embarcadero property. This claim is also meritless. In raising this claim, Plaintiff relies primarily on the 2009 "Ogden memo," in which Deputy Attorney General David Ogden advised federal prosecutors on making "efficient and rational use of [the Department of Justice's] limited investigative and prosecutorial resources." *See* Ex. 7 to Pl. Motion to Stay, ECF No. 16-8. The memo noted that, in general, "prosecution of "individuals whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana,"

---

or own[ing] all or part of an illegal gambling business." 18 U.S.C. § 1955(a). An "illegal gambling business" is one that "has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day." *Id.* § 1955(b)(1)(iii). In contrast, with respect to the underlying offense in the Seventh Circuit case, every act of unlawful importation of "any article" provides a separate basis for forfeiture of the property used to facilitate that act. *Cf.* 19 U.S.C. § 1595a(a).

such as "individuals with cancer or other serious illnesses who use marijuana as part of a

recommended treatment regimen[,] . . . is unlikely to be an efficient use of limited federal

resources." *Id.* At the same time, the memo emphasized that marijuana remains an illegal drug,

that the distribution and sale of marijuana is a serious crime, and that the "prosecution of

significant traffickers of illegal drugs, including marijuana, and the disruption of illegal drug

manufacturing and trafficking networks continues to be a core priority." *Id.* at 1. Thus,

"prosecution of commercial enterprises that unlawfully market and sell marijuana for profit

continues to be an enforcement priority of the Department." *Id.* at 1-2.

   The memo also explicitly stated that it did not "'legalize' marijuana or provide a legal

defense to a violation of federal law, nor is it intended to create any privileges, benefits, or rights

. . . in any administrative, civil, or criminal matter." *Id.* at 2. The memo reiterated that "clear and

unambiguous compliance with state law" would not "create a legal defense to a violation of the

Controlled Substances Act," and that the memo was "intended solely as a guide to the exercise of

investigative and prosecutorial discretion" and would not preclude investigation or prosecution

where it serves important federal interests. *Id.* at 2-3.

   Several courts – including Judge Armstrong in this Court – have already rejected claims

that, in light of the Ogden memo, the United States is equitably estopped from enforcing the

CSA against California marijuana dispensaries. *See MAMM v. Holder* ("*MAMM I*"), 866 F.

Supp. 2d 1142, 1155-56 (N.D. Cal. 2011) (holding that plaintiff marijuana dispensaries "are hard

pressed to claim that it was reasonable to rely on [the 2009 Ogden memo] that was not even

addressed to them – and which unequivocally did not state that marijuana for medical reasons

was 'legal'"); *MAMM v. Holder* ["*MAMM II*"], No. 11-5349, 2012 WL 2862608, at *11 (N.D.

Cal. July 11, 2012) (dismissing equitable estoppel claim for the same reasons); *Alternative Cmty.

Health Care Co-op., Inc. v. Holder*, No. 11-2585, 2012 WL 707154 (S.D. Cal. Mar. 5, 2012)

(plaintiff marijuana dispensaries "could not have reasonably believed their conduct was

sanctioned by the [federal] government"); *Sacramento Nonprofit Collective v. Holder,* 855 F.

Supp. 2d 1100, 1112 (E.D. Cal. 2012) (dismissing equitable estoppel claim because plaintiffs

1   failed to show requisite "affirmative misrepresentation").[2]

2          Plaintiff offers nothing to support a different result in this case. As an initial matter, as a

3   member of this Court recognized in the recent *MAMM* case, "the Government may not be

4   estopped on the same terms as any other litigant." *MAMM I*, 866 F. Supp. 2d at 1153 (quoting

5   *Heckler v. Cmty. Health Servs., Inc.*, 467 U.S. 51, 60 (1984)), particularly where estoppel

6   "'would compromise a governmental interest in enforcing the law,'" *id.* (quoting *New*

7   *Hampshire v. Maine*, 532 U.S. 742, 755 (2001)). Indeed, in the Ninth Circuit, a plaintiff seeking

8   to estop the government must establish that "the government engaged in 'affirmative

9   misconduct,' and that the government's conduct has caused 'a serious injustice.'" *United States*

10  *v. Bell*, 602 F.3d 1074, 1082 (9th Cir. 2010) (quoting *Watkins v. U.S. Army,* 875 F.2d 699, 707

11  (9th Cir.1989) (en banc)). Estoppel is inappropriate where the government's position has shifted

12  due to "a change in public policy" or in governing law. *New Hampshire*, 532 U.S. at 755

13  (internal quotation omitted). Thus, the court in *Bell* soundly rejected an estoppel claim similar to

14  the one Plaintiff seeks to raise here, based on the plaintiff's purported "reli[ance] on the

15  government's statements decades ago that it would not enforce" a particular provision, holding

16  that "simple non-enforcement" certainly did not rise" to the level of "affirmative

17  misrepresentation or affirmative concealment of a material fact" that would be required. *Bell*,

18  602 F.3d at 1082 (internal quotation omitted).

19         Plaintiff similarly cannot succeed under this standard. Even accepting as true Plaintiff's

20  contention that the *1840 Embarcadero* forfeiture action – against a property whose tenant claims

21  to be "the largest retailer of marijuana on the planet," whose gross revenues exceed $20 million,

22  Compl.¶¶ 16-17, *1840 Embarcadero* – represents a change in the government's enforcement

23  policy, such a change cannot properly be characterized as misconduct or misrepresentation.

24         Moreover, Plaintiff itself does not claim to face forfeiture or prosecution under the CSA.

25  It is therefore even further removed from an "entrapment-by-estoppel" claim than the plaintiff

26  dispensaries in *MAMM*, where the Court noted that the doctrine had no application in the absence

27  ───────────────────

[2] All three cases are currently on appeal. *See* Nos. 12-16710 (9th Cir. *appeal docketed* Aug. 8,

28  2012) 12-55775 (9th Cir. *appeal docketed* Apr. 27, 2012) 12-15991 (9th Cir. *appeal docketed*
    Apr. 27, 2012).

1  of a criminal proceeding against the plaintiffs. *MAMM I*, 866 F. Supp. 2d at 1156. In addition, in

2  order to establish the government's "affirmative misconduct," as would be necessary for an

3  entrapment claim, Plaintiff would have to establish that an authorized representative of the

4  United States "affirmatively told" it that "the proscribed conduct was permissible," that it "relied

5  on the false information," and that the "reliance was reasonable." *United States v. Schafer*, 625

6  F.3d 629, 637 (9th Cir. 2010) (rejecting entrapment-by-estoppel defense where defendants "were

7  aware that marijuana [possession] was illegal under federal law").

8          Again, Plaintiff cannot satisfy this standard. As the Court observed in *MAMM*, the Ogden

9  memo was directed at U.S. Attorneys, not at dispensaries or municipalities, and "nothing in the

10  Ogden memo affirmatively informs medical marijuana growers and distributors that their

11  conduct is legal." *MAMM I*, 866 F. Supp. 2d at 1155. To the contrary, the memo by its own

12  terms "d[id] not alter in any way the Department's authority to enforce federal law," "d[id] not

13  'legalize' marijuana or provide a legal defense to a violation of federal law," and did not "create

14  any privileges, benefits, or rights, substantive or procedural, enforceable by any individual, party

15  or witness in any administrative, civil, or criminal matter." Ogden Mem., at 2. Any reliance on

16  the Ogden memo – or on any of the media statements that Plaintiff references in its Complaint,

17  none of which suggest that large marijuana dispensaries such as Harborside were in compliance

18  with federal law – is certainly not reasonable. *See MAMM I*, 866 F. Supp. 2d at 1156; *see also*

19  *United States v. Stacy*, 734 F. Supp. 2d 1074, 1079-80 (S.D. Cal. 2010) (rejecting entrapment-by-

20  estoppel defense based on the Ogden memo); *United States v. Hicks*, 722 F. Supp. 2d 829, 833

21  (E.D. Mich. 2010) ("The Department of Justice's discretionary decision to direct its resources

22  elsewhere does not mean that the federal government now lacks the power to prosecute those

23  who possess marijuana.").

24          Moreover, Plaintiff's claim of detrimental reliance falls flat. To the contrary, according to

25  Plaintiff's own allegations, it has received a windfall of millions of dollars in business and sales

26  tax revenues as a result of the illegal marijuana distribution activities of the Harborside

27  dispensary and other similar dispensaries over the past six years. *See* Compl. ¶¶ 53-54

28  (projecting $1.4 million in business tax revenue from four dispensaries for 2012). Indeed, this

1   amount appears ample to cover the cost of a "new auditor" and some training provided to five

2   employees, and Plaintiff admits that the amount of revenue generated from marijuana

3   dispensaries was sufficient to fund many other activities as well. *Id.* ¶¶ 54, 59. The fact that

4   Plaintiff would not receive such high tax revenues in the future if Harborside were to cease these

5   activities can hardly qualify as "detrimental reliance."

6          Moreover, to the extent that Plaintiff attempts to rely on the assertion that Oakland

7   residents are in need of "medical cannabis," Compl. ¶¶ 76, 79, such an assertion cannot justify

8   the injunctive relief that Plaintiff seeks. As the Court held in *MAMM*, the Supreme Court's

9   decision in *Oakland Cannabis*, that under the CSA, "marijuana has 'no currently accepted

10  medical use,'" poses an "insurmountable challenge" to such a "medical necessity" argument. *See

11  MAMM I*, 866 F. Supp. 2d at 1160 (quoting *Oakland Cannabis*, 532 U.S. at 491). As stated in

12  that decision, "'a court sitting in equity cannot ignore the judgment of Congress, deliberately

13  expressed in legislation,'" and this Court is therefore "bound by 'the balance that Congress has

14  struck in the [CSA].'" *Id.* (quoting *Oakland Cannabis*, 532 U.S. at 497-98). The Court in *MAMM*

15  thus concluded that Supreme Court precedent "legally nullif[ies]" a plaintiff's claim of harm

16  based on medical need for marijuana. *Id.* at 1161. All told, Plaintiff's estoppel claim fails to state

17  a claim upon which relief can be granted.

## CONCLUSION

18

19         For the foregoing reasons, Defendants respectfully request that the Court dismiss this

20  action.

21         Dated:  December 10, 2012                    Respectfully submitted,

22

23                                                      STUART F. DELERY
                                                        Principal Deputy Assistant Attorney General
24                                                      ARTHUR R. GOLDBERG
                                                        Assistant Director, Federal Programs Branch
25

26                                                       /s/ Kathryn L. Wyer
                                                        KATHRYN L. WYER (Utah #9846)
27                                                      U.S. Department of Justice, Civil Division
                                                        20 Massachusetts Avenue, N.W.
28                                                      Washington, DC  20530

Defendants' Memorandum in Support of Motion to Dismiss
Case No.3:12-cv-5245 (MEJ)

Tel. (202) 616-8475/Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for the Defendants*

14

Defendants' Memorandum in Support of Motion to Dismiss
Case No.3:12-cv-5245 (MEJ)