UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| CITY OF OAKLAND,<br><br>        Plaintiff,<br><br>   v.<br><br>ERIC HOLDER, Attorney General of the United States; MELINDA HAAG, U.S. Attorney for the Northern District of California,<br><br>        Defendants.<br>_____/ | No. C 12-05245 MEJ<br><br>**ORDER GRANTING THE CITY OF OAKLAND'S MOTION TO STAY FORFEITURE PROCEEDINGS PENDING APPEAL** [Dkt. No. 56]<br><br>Concurrently filed in:<br>No C. 12-03566 MEJ<br>No. C 12-03567 MEJ |

## I. BACKGROUND

On October 10, 2012, the City of Oakland filed this lawsuit challenging the Federal Government's initiation of a civil forfeiture action against property located at 1840 Embarcadero, Oakland, California, which is also currently pending before this Court.[1] Harborside Health Center leases the property at 1840 Embarcadero, where it operates a medical cannabis dispensary. Compl. ¶ 1, Dkt. No. 1. According to Oakland, the Government's attempt to seize the property – and ultimately stop Harborside's operation at that location – not only impinges on the regulatory framework Oakland has developed to oversee medical cannabis dispensaries in compliance with California law, but more significantly, presents a threat to the health and safety of Oakland's citizens by cutting off their access to an established medical marijuana supplier. Compl. ¶¶ 32-35. In its Complaint, Oakland sought a declaratory judgment and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Administrative Procedures Act, 5 U.S.C. §§ 702, 706, challenging the forfeiture action on two grounds: (1) it is untimely under the statute of limitations

---

[1] *United States v. Real Property and Improvements Located at 1840 Embarcadero, Oakland, California*, Case No C 12-3567 MEJ.

applicable to civil forfeiture actions; and (2) the Government is equitably estopped from seeking forfeiture of the defendant property based on the Government's past representations and conduct. Compl. at 13-15. Oakland's lawsuit, however, came to a halt on February 14, 2013, when the Court granted the Government's Motion to Dismiss for lack of subject matter jurisdiction. Dkt. No. 53. Specifically, the Court agreed with the Government that Oakland had failed to demonstrate that the forfeiture proceeding against the 1840 Embarcadero property constitutes "final agency action for which there is no other adequate remedy in court," pursuant to § 704 of the Administrative Procedure Act. *Id*. at 5-9. As a result, there is no waiver of the Government's sovereign immunity under the APA for Oakland's action, mandating dismissal. *Id*.

On February 29, 2013, Oakland appealed this Court's dismissal order to the Ninth Circuit Court of Appeals. *Oakland v. Holder*, Case No. 13-15391, Dkt. No. 1. Concurrently, Oakland filed the instant Motion to Stay Forfeiture Proceedings Pending Appeal. Dkt. No. 56. In its Motion, Oakland requests that the Court stay all proceedings in the *1840 Embarcadero* action until the Ninth Circuit has ruled on its appeal.[2] It asserts that a stay is necessary to protect its ability to litigate the claims it asserted in its Complaint should the Ninth Circuit reverse this Court's dismissal, as well as to prevent irreparable harm to its citizens in the interim period. The Government opposes Oakland's Motion, arguing that Oakland cannot stay an action to which it is not a party; that the Court lacks jurisdiction to stay the *1840 Action* because it would change the status quo; and that even if jurisdiction exists, Oakland has failed to satisfy the applicable standard for a stay or an injunction. Ana Chretien (the owner and landlord of the 1840 Embarcadero property) and Harborside have joined in Oakland's Motion. Dkt. Nos. 58, 59.

On June 20, 2013, the Court held a hearing on this matter. Having carefully considered the parties' arguments and controlling authorities, the Court now **GRANTS** Oakland's Motion.

---

[2] The Ninth Circuit has set the parties' briefing schedule, but has not set the matter for hearing. *Oakland v. Holder*, Case No. 13-15391, Dkt. No. 18.

## II.  DISCUSSION

**A.     Preliminary Considerations**

In its Motion, Oakland requests that the Court stay the *1840 Embarcadero* forfeiture proceeding while it pursues its appeal before the Ninth Circuit.  Neither party disputes that this Court possesses the power to stay entry of a judgment in a matter pending before it, whether sua sponte or at the request of a party to that action.  Here, however, because the Court terminated Oakland's lawsuit, there is no judgment or proceeding remaining for the Court to stay.  What Oakland seeks – which differentiates the instant Motion from the typical stay request – is to suspend an action to which it is not a party, but in which it purports to have an interest which may be affected while it pursues its appeal.  The Government maintains that Oakland is overreaching with its request.  Citing *Niken v. Holder*, 566 U.S. 418, 421 (2009), the Government contends that a stay pending appeal is for the purpose of "hold[ing] [the district court's] ruling in abeyance to allow an appellate court the time necessary to review it."  Opp. at 2, Dkt. No. 46.  According to the Government, Oakland is attempting to intrude into a proceeding in which the Court has already held it has no legal standing to participate, and the Court should therefore deny its request so the forfeiture action can proceed.

Although case law on whether a stay is appropriate in this scenario is thin, Oakland has identified at least one decision recognizing that courts may consider a movant's request to stay a separate proceeding.  In *Sisters of Mercy Health System v. Kula*, 2006 WL 2090090, at *1 (W.D. Okl. July 25, 2006), the district court confronted the same issue before this Court: whether a stay is appropriate "where the movant asks a court to enter an order in an action which is currently on appeal, and where that order would then stay a different but related action which is pending before the same judge involving some but not all of the same parties, and where the movant asks that such a stay remain in place until the appeal of the action in which the movant brought the motion is determined."  Although it ultimately denied the request on its merits, the court addressed jurisdictional and standing issues pertinent to this matter.

As to its authority to entertain the stay request, the court noted that after the appeal was filed, it retained jurisdiction to rule on matters collateral to the appeal, including the stay request.  *Id*. at *2.

3

With respect to the plaintiff-insurer's standing to seek a stay of a related case to which it was not a party, the court found that standing existed because the plaintiff had a stake or interest in the subject matter of that case, namely, its obligation to defend and indemnify the defendant-insured in that litigation. *Id*.

Here, Oakland's lawsuit focused on the legality of the *1840 Embarcadero* forfeiture action. Thus, there is a sufficient nexus between this action and the *1840 Embarcadero* action to make Oakland's request reasonable. Put another way, like the plaintiff in *Sisters of Mercy Health*, Oakland has demonstrated that it has a stake or interest in the action that is the target of its stay request.

Nevertheless, the Government contends that the stay Oakland seeks is more appropriately categorized as a request for an injunction pursuant Federal Rule of Civil Procedure 62(c).[3] Opp. at 3-4. Construing the Motion as a request for an injunction, the Government argues that the Court must deny the request because an injunction would change the status quo, which the Court lacks authority to do once Oakland filed its appeal. *Id*. Oakland does not dispute that Rule 62(c) may apply, but maintains that even if its does, it has satisfied the requirements for an injunction and that the result would protect, rather than change, the status quo.

As the Government correctly points out, "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." *Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2011). The exception to this principle is codified in Rule 62(c), which authorizes the district court to grant an injunction to preserve the status quo during the pendency of an appeal. Fed. R. Civ. P. 62(c); *Nat. Res. Def. Council*, 242 F.3d at 1166. Thus, "any action taken pursuant to Rule 62(c) may not materially alter the status of the case on appeal." *Id.* at

---

[3] Rule 62(c) provides:
   **Injunction Pending an Appeal.** While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights. If the judgment appealed from is rendered by a statutory three-judge district court, the order must be made either:
   (1) by that court sitting in open session; or
   (2) by the assent of all its judges, as evidenced by their signatures.

1166 (internal quotation and citation omitted).

The Government asserts that, at the time Oakland filed its appeal, "there was no injunction in effect that precluded the United States from proceeding with the forfeiture action in *1840 Embarcadero*. . . . The status quo at this point is therefore that the *1840 Embarcadero* forfeiture action is underway, and [Oakland]'s attempt to halt that action has been deemed invalid." Opp. at 4. According to the Government, Oakland's request seeks to change that status quo and "to obtain, at least during the pendency of its appeal, the very relief that this Court determined it did not have subject matter to grant in this case." *Id*.

The Court, however, disagrees with the Government's characterization of the status quo. As Oakland points out, when it filed its appeal, the forfeiture action was pending and Harborside was operating its dispensary on the defendant property. That is the state of affairs Oakland seeks to preserve during the appeal process. Whether characterized as a stay or an injunction, the objective is to ensure that, should the Ninth Circuit rule that Oakland has standing to pursue its claims, the forfeiture action Oakland is challenging will still exist. Thus, Oakland is not trying to materially alter the status of the forfeiture action, but to keep the status of the lawsuit from changing. Accordingly, even if Rule 62(c) controls Oakland's request, the Court rejects the Government's argument that the Court lacks jurisdiction to issue an injunction because it would change the status quo.

Whether the Court construes Oakland's request as a stay or as a request for an injunction pursuant to Rule 62(c), the parties agree that the same substantive analysis applies. Accordingly, having determined that Oakland has made a threshold showing that there is some connection between this lawsuit and the *1840 Embarcadero* action, the Court turns to the issue of whether Oakland has demonstrated that a stay or injunction of that action is appropriate.

**B.     Legal Standard**

The Supreme Court has recognized that a court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In this way, a stay is " an exercise of judicial discretion, and the propriety of its issue is

dependent upon the circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Niken v. Holder*, 556 U.S. 418, 433-34 (2009) (internal quotation marks and citations omitted). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 433.

In determining whether to exercise its discretion to stay an order pending appeal, the Court examines four factors: (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (stay of order releasing prisoner); *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (stay of removal). The Court will therefore assess Oakland's stay request in light of each of these factors.

**C.     Application**

      1.     <u>Likely Success on the Merits</u>

The Ninth Circuit has noted that "[t]here is some uncertainty as to the exact degree of likely success that stay petitioners must show, due principally to the fact that courts routinely use different formulations to describe this element of the stay test." *Leiva-Perez*, 640 F.3d at 967 (citation omitted). In particular, courts have indicated that to satisfy the "minimum quantum of likely success necessary to justify a stay," a movant must demonstrate a "reasonable probability" or a "fair prospect" of success; "a substantial case on the merits;" or that "serious legal questions are raised." *Id.* at 967-68. These formulations, however, are "essentially interchangeable, and . . . none of them demand a showing that success is more likely than not." *Id.* at 968; *see also Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). Rather, "[a]ll of these formulations indicate that, 'at a minimum,' a petitioner must show that there is a 'substantial case for relief on the merits.'" *Lair*, 697 F.3d at 1204 (quoting *Leiva-Perez*, 640 F.3d at 968).

In their briefs, the parties devote a substantial amount of time re-litigating whether Oakland satisfied the jurisdictional requirements of § 704 of the APA. The Court's prior decision represents its best assessment of whether the APA opens the door to collateral challenges to the civil forfeiture

statute – an issue of first impression in this Circuit. While the Court ultimately held that Oakland's claims did not fit within the parameters of the APA, this Court is not infallible in its rulings and Oakland's appeal allows the Ninth Circuit to provide guidance on whether this Court's construction of the applicable statutory provisions was correct. Thus, while the parties' renewed arguments about Oakland's standing reach beyond what is necessary for this Court to evaluate this initial factor, they highlight that the positions Oakland advanced as to whether § 704's dual requirements were met are not unreasonable or completely baseless. Rather, Oakland raises novel legal questions about the interplay between the APA and the civil forfeiture statutory scheme.

As the district court noted in *Gray v. Golden Gate Nat'l Recreational Area*, 2011 WL 6934433, at *2 (N.D. Cal. Dec. 29, 2011), several "other courts in this district have held that a showing that 'serious legal questions' have been raised on appeal will satisfy the requirement of likelihood of success on the merits . . . ." Thus, in *Gray* the court reasoned that because the defendants' appeal from the court's order granting class certification raised issues of first impression in this Circuit, the defendants had made a sufficient showing as to the first factor. *Id*. The same is true here. Whether the claims process set forth in 18 U.S.C. § 983(a)(4)(A) and Supplemental Rule G(5)(a)(I) provides an adequate remedy and whether the Government's initiation of the *1840 Embarcadero* forfeiture action constitutes "final agency action," are serious legal questions sufficient to satisfy the requirement of likelihood of success on the merits.[4] That these questions raise threshold jurisdictional issues underscores their legal significance. If this Court's analysis was incorrect, the Court's dismissal will have foreclosed Oakland from protecting its interests. Thus, at the heart of Oakland's appeal is its right to access the federal court to assert its claims – a right of paramount importance.

For these reasons, the Court finds that the first factor weighs in favor of granting Oakland's

---

[4] In its Motion, Oakland contends that its appeal "raises at least ten questions of first impression in the Ninth Circuit, any one of which satisfies the quantum of showing on the merits necessary to support a stay." Mot. at 2. The questions Oakland poses all relate to the jurisdictional requirements of the APA addressed in the Court's dismissal order and the broader question of whether a non-claimant may challenge a forfeiture proceeding.

request.

### 2. Irreparable Harm

The second factor the Court must consider is whether Oakland has demonstrated that irreparable harm is probable if the stay is not granted. *Leiva-Perez*, 640 F.3d at 968. Oakland argues that if the *1840 Embarcadero* action proceeds, the jurisdictional issues it is raising on appeal, as well as its substantive challenges to the forfeiture proceeding, will become moot if the Government succeeds in seizing the property. Mot. at 16. Oakland further contends that, "if Harborside is closed while the Ninth Circuit reviews Oakland's appeal, a cascade of harms will befall Oakland . . . ." *Id*. at 17. Specifically, Oakland submits that Harborside's closure would precipitate "a public safety crisis it is not equipped to meet," by forcing tens of thousands of patients who are served by medical cannabis dispensaries to either forgo their medicine or turn to illegal markets to obtain it, thereby endangering their health and safety and further straining the limited resources of the Oakland Police Department. *Id*.

The Government responds that Oakland has only identified speculative injuries and thus cannot meet the irreparable harm requirement. Opp. at 9. As to the potential mooting of Oakland's legal challenges, the Government argues that Oakland will not suffer any actual harm because the claimants in the forfeiture proceeding intend to assert the same statute of limitations and equitable estoppel defenses that Oakland seeks to assert in this lawsuit. *Id*. at 10. It argues that if the claimants prevail on their defenses, Oakland's claims would become moot only because it seeks the same remedy as the claimants; conversely, if the claimants' defenses fail, Oakland's claims would necessarily fail as well. *Id*. The Government thus reasons that in either scenario the effect on Oakland would not qualify as irreparable harm. Further, the Government asserts that Oakland's "public safety crisis" stemming from a closure of the Harborside dispensary amounts to nothing more than "wild speculation" and lacks any factual basis. *Id*.

The Court has carefully considered the parties' arguments and finds that if the forfeiture action proceeds, the potential mooting of Oakland's claims – either by the Court ruling on the claimants' defenses or by the forfeiture of the 1840 Embarcadero property – constitutes irreparable

8

injury to Oakland. While the Government is correct that the claimants' statute of limitations and equitable estoppel defenses may overlap with Oakland's claims, Oakland stands in a different position than any of the claimants and may therefore raise arguments or present evidence in support of either theory which is unique to it as a municipality. Given that the forfeiture action and the appeal would be proceeding simultaneously, the harm to Oakland's ability to litigate its claims is probable and not merely conjectural. Moreover, the mooting of its claims cannot be remedied by any damages award or other relief. Based on these considerations, the Court finds that this factor weighs in favor of granting the stay.

### 3. Injury to Other Interested Parties

Under the third factor, the Court evaluates whether a stay will substantially injure the other parties interested in the proceeding. *Lair*, 697 F.3d at 1215. Oakland contends that neither the Government nor the claimants will suffer any hardship from a stay of the *1840 Embarcadero* action. Mot. at 21. In support, it asserts that because Harborside was openly operating nearly six years before the Government initiated the forfeiture action, the Government cannot now complain that there is any urgency to the forfeiture process. *Id*. As to the claimants, Oakland contends that while the stay is in place, Harborside would remain open and able to serve its patients, Summit Bank's security interest in the property would not be impacted, and Ms. Chretien will be able to continue to collect rent from Harborside consistent with their lease agreement. *Id*.

The Government, however, argues that imposing a stay would hinder its ability to enforce federal drug laws. Opp. at 11. It argues that in the exercise of its prosecutorial discretion, it determined that it was appropriate to initiate a forfeiture proceeding against the 1840 Embarcadero property in July 2012 and that Oakland "had attempted to frustrate the Government's efforts at every turn by filing this separate action . . . and by seeking a succession of stays and delays in the forfeiture case while it pursues its flawed arguments in this case." *Id*. at 12. It characterizes the current stay request as simply another attempt by Oakland to delay the forfeiture proceeding indefinitely. *Id*.

While the Court understands – indeed, shares – the Government's concern about ensuring that the *1840 Embarcadero* action advances in a timely manner, the Court does not see any appreciable

9

harm to the Government if the forfeiture proceeding is stayed during Oakland's appeal. There is no risk that the defendant property will be lost or damaged or that evidence relevant to the forfeiture proceeding will become stale during a temporary stay of the action. The Court also appreciates the Government's concern over protecting its ability to enforce federal law. While a stay may temporarily suspend the forfeiture proceeding against the defendant property, the Government has put the claimants in the *1840 Embarcadero* action – as well as any other individuals with connections to property used for similar medicinal cannabis dispensary operations – on notice of its intention to utilize the civil forfeiture process to compel compliance with federal drug laws. In fact, at the June 20, 2013 hearing on this matter, the Government indicated that it has recently filed forfeiture actions against other medicinal cannabis dispensaries in California. Clearly, the Government's ability to enforce federal drug laws through forfeiture actions remains undiminished and the Court fails to see how suspending a single action will inhibit that ability. Moreover, issuance of a stay to allow Oakland to seek appellate review of its standing under the APA ensures that no party with legally cognizable interests and rights is excluded from the forfeiture proceeding, thereby mitigating the risk that the forfeiture proceeding may be subject to appeal on such grounds.

With respect to the claimants, as Oakland points out, there is no apparent harm that would result from a stay. Rather, Ms. Chretien, Harborside, Harborside's clients, and Summit Bank's interests would be unaffected. In fact, if the Ninth Circuit determines that Oakland may properly assert its challenges to the forfeiture action, the claimants may benefit from having an additional party raise its challenges to the Government's action.

In light of the absence of substantial injury to either the Government or the claimants, the Court finds that this factor weighs in favor of issuing a stay.

4.   Public Interest

Finally, the Court must weigh the public interest at stake against any harm to the opposing party. *Lair*, 697 F.3d at 1215. Oakland contends that its lawsuit raises issues of significant public importance, namely: protecting the public health and safety of Oakland's residents; protecting the right of patients to access medical cannabis; and promoting efficiency, conserving the Court's and the

parties' resources, and avoiding the risks of re-litigation and inconsistent rulings. Mot. at 22-23. The Government, on the other hand, maintains that Oakland's objective of facilitating access to marijuana at the 1840 Embarcadero property ignores the fact that marijuana remains a Schedule I controlled substance under the Controlled Substances Act. Opp. at 12. Thus, the Government asserts "this Court is precluded from deeming [Oakland]'s effort in the public interest," because the public interest lies in the Controlled Substances Act, where Congress has indicated that there is no public interest in the medicinal use of marijuana. *Id.* (citing *United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 497 (2001)).

While the parties narrow their focus on whether there is a public benefit to medicinal cannabis use, the Court finds the other interests Oakland identified to be the most compelling. As discussed above, at the core of Oakland's lawsuit is the novel legal issue regarding whether a municipality has standing under the APA to challenge a civil forfeiture action against property when the action may affect its regulatory scheme and its residents. Thus, the question regarding Oakland's standing to assert claims on behalf of its citizens in federal court is a matter of significant public interest. Likewise, the interest in conserving the Court's and the parties' resources by coordinating discovery and litigation of common claims and avoiding the possibility of inconsistent rulings is also of great importance. This, of course, must be measured against the Government's right to have the forfeiture action proceed without undue interruption. However, on balance, the importance of the legal question now before the Ninth Circuit regarding Oakland's standing to bring its action, along with ensuring that any and all challenges to the Government's forfeiture action are litigated consistently and in the most efficient manner possible, tip the public interest factor squarely in favor of granting the stay.

5. <u>Summary</u>

Taking the foregoing factors into consideration, the Court finds that Oakland has demonstrated that each of the four factors supports its stay request. The issues relating to Oakland's standing to pursue its claims under the APA present novel questions of law for which Oakland has reasonable, good-faith arguments. If the forfeiture action proceeds concurrent with the appeal,

11

1  Oakland's claims may become moot, thereby irreparably harming Oakland's legal rights should the
2  Ninth Circuit determine that it has standing to bring its lawsuit.  Further, there is nothing suggesting
3  that the Government or the claimants will be substantially injured if the forfeiture proceeding is
4  temporarily suspended during the appeal.  Finally, Oakland's lawsuit and the legal issues it has raised
5  on appeal relate to its right to assert claims to challenge federal action it believes is inappropriate and
6  a threat to its citizens.  This is a matter of significant public interest.  In sum, these factors militate in
7  favor of staying the *1840 Embarcadero* forfeiture proceeding while Oakland pursues its appeal of the
8  standing issue.

### D.    The San Jose Forfeiture Action

Although not raised in the parties' briefs, during the hearing on Oakland's Motion, the Court posed the question whether a stay of *United States v. Real Property and Improvements Located at 2106 Ringwood Ave., San Jose, California*, Case No. C 12-3566 MEJ – the Government's forfeiture action against the real property where Harborside's San Jose dispensary is located – would also be prudent given the similarity of parties and issues.  On August 20, 2012, the Court related the *1840 Embarcadero* and the *2106 Ringwood* cases.  Case No. C 12-3566, Dkt. No. 11.  The Government indicated that it opposed staying the *2106 Ringwood* action because there is no relation between Oakland's action against the Government and the San Jose forfeiture proceeding.  Harborside and Concourse Business Center (a claimant in the *2106 Ringwood* action) presented considerations demonstrating the connection between the two actions.  Specifically, Harborside's counsel stated that all of the discovery Harborside would seek from the United States would be equally applicable to both cases.  Thus, if the *2106 Ringwood* action proceeded unilaterally, it would result in duplication of effort on behalf of all of the parties.  Further, Concourse Business Center, a claimant in the *2106 Ringwood* forfeiture action, indicated that the claimants in both actions intend to assert the same defenses, thereby raising similar legal issues.  The Court finds Harborside and Concourse's points to be well-taken.  Thus, in light of the legal and factual overlap that exists between the two forfeiture

proceedings, a stay of the *2106 Ringwood* action is appropriate as well.[5]

### III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Oakland's Motion to Stay Forfeiture Proceedings Pending Appeal (Dkt. No. 56).

The Court **HEREBY STAYS** *United States v. Real Property and Improvements Located at 1840 Embarcadero, Oakland, California*, Case No. C 12-2567 MEJ, and Case No. C 12-3566 MEJ, *United States v. Real Property and Improvements Located at 2106 Ringwood Avenue, San Jose, California*, pending the Ninth Circuit's disposition of Oakland's appeal.

The Court **FURTHER ORDERS** that every 60 days from the date of this Order, Oakland shall file a status report apprising the Court of any deadlines and hearing dates set by the Ninth Circuit in its appeal and shall file a final status report notifying this Court when the Ninth Circuit issues its decision.

**IT IS SO ORDERED.**

Dated: July 3, 2013

_____
Maria-Elena James
United States Magistrate Judge

---

[5] As with the *1840 Embarcadero* action, the Court sees no appreciable harm to the parties in the *2106 Ringwood* action stemming from a temporary stay pending resolution of Oakland's appeal.

13